## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**THOMAS GUST STEVENS**,                    Case No.  **14-60114-7**

Debtor.

## MEMORANDUM OF DECISION

At Butte in said District this 1ˢᵗ day of June, 2015.

Pending in this Chapter 7 bankruptcy is the amended motion (Document Nos. 43/66) filed by Debtor's parents George L. Stevens and Gertrude L. Stevens ("Gert") (together "the Stevens") requesting reconsideration of this Court's Order (Doc. 38) which approved the Trustee's application (Doc. 37) to approve employment of attorneys David B. Cotner ("Cotner") and his firm Datsopoulos MacDonald & Lind, P.C. ("DML") on a contingency fee basis to pursue potential avoidance actions against the Stevens.  The Stevens' son, Debtor Thomas Gust Stevens ("Debtor" or "Tom"), filed a joinder to their motion (Doc. 45).  The Trustee Christy L. Brandon filed a response in opposition to the Stevens' motion, as did creditors Feist Watson Enterprises, Inc., Northwest Fuel Systems, Inc., Tabish Brothers Distributors Inc., d/b/a Great Western Petroleum, and Tidal Wave Carwash Supply (collectively referred to hereinafter as "the Creditors").  A hearing on the Stevens' motion was held at Missoula on May 7, 2015.   The parties appeared represented by counsel.  Witness testimony and exhibits were admitted into evidence, and the Court heard arguments from the parties or their counsel.  At the conclusion of the hearing the Court took the Stevens' amended motion under advisement.  After review of the motion, joinder, briefs, the record, and applicable law, the Stevens' motion for reconsideration

1

will be denied for the reasons set forth below.

This Court has exclusive jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a).  The Stevens' amended motion for reconsideration of the Order of employment of Cotner and DML by the estate is a core proceeding concerning administration of the estate under 28 U.S.C. § 157(b)(2)(A) & (O).  At issue is whether Cotner is disqualified from employment by the Trustee as a result of Cotner's representation of the Creditors in their state court lawsuit against the Stevens at the same time he seeks to be employed to represent the estate or due to a conflict of interest resulting from the alleged representation by Cotner's partner in DML, William VanCanagan, of Tom and his parents in a past transfer of a liquor license and formation of a casino business.  This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

The Stevens appeared at the May 7, 2015, hearing represented by attorney Harold V. Dye ("Dye") of Missoula, and Gert Stevens testified.  The Trustee Christy L. Brandon appeared and testified.  Trent N. Baker ("Baker") of DML, who testified on rebuttal, represented the Creditors; Cotner appeared and testified.  The Debtor appeared and testified, represented by attorney Jon R. Binney.  Tom's business partner, Joseph McDonald ("McDonald"), and William VanCanagan ("VanCanagan") of DML also testified.  The Court admitted the following exhibits ("Ex.") pursuant to the stipulation of the parties: The Stevens' Ex. 1, 2, 3, 4, 5, 6, Trustee's Ex. A and B, and Creditors' Ex. 1, 2, 3, 4, 5, 6, 7, 8, and 9.

## FACTS

### The Parties.

The Stevens have been involved in businesses involving liquor licenses and have

2

provided their son, Tom, with financing for his business ventures, including a casino and car wash business which Tom formed with McDonald[1] known as "The Gaming Garage Casino" ("Gaming Garage") in Missoula. Tom testified that he and McDonald agreed to form the Gaming Garage, with McDonald supplying a liquor license and Tom contributing a building and land. Gert testified that both Tom and McDonald were broke, and that the Stevens provided them with financing and guaranteed bank debt underlying their Gaming Garage transaction. Gert also agreed to release a lien which she held against Tom's property securing a $263,000 loan to him.

McDonald testified that he has lived in Missoula for 26 years. He hired VanCanagan and the DML law firm to represent him in several transactions. VanCanagan testified that McDonald is a longtime client of DML, beginning when DML handled the probate of McDonald's mother's estate.

DML is an established law firm in Missoula. VanCanagan has been an attorney with DML firm since 1982. Cotner testified that when DML takes on a client it undergoes a detailed conflicts check of its computer records in order to avoid conflicts of interest.

**VanCanagan's Representation.**

Gert, prior to VanCanagan's involvement, informed McDonald that she could do the required paperwork and had in prior unrelated transactions. McDonald testified that he wanted counsel. Gert informed McDonald that the Stevens, Tom and Christina would not pay any fees or costs associated with an attorney. VanCanagan testified that McDonald contacted him to

---

[1]At the time of the hearing McDonald testified that he lived in a rental owned by the Stevens for 3 years with his 4 dogs. He testified that Gert phoned him after he submitted an affidavit in this matter, ordered him to vacate the property and called him a traitor and a liar.

represent McDonald and his corporation K-Mac Corporation ("K-Mac"), and no one else, to prepare documents to establish two limited liability companies ("LLCs") with Tom and his spouse for the purpose of operating the Gaming Garage. McDonald testified that he felt VanCanagan represented both himself and his corporation K-Mac. Tom testified that McDonald wanted counsel and said that McDonald would pay VanCanagan's fee.

Because McDonald was a longtime client, DML did not require a new engagement letter from him describing VanCanagan's latest representation of McDonald and K-Mac or a fee agreement. No written documentation exists in the record explaining the scope of DML's or VanCanagan's representation with respect to the formation of the Gaming Garage.

McDonald testified that Tom was not represented by an attorney during the transaction forming the Gaming Garage and that the Stevens had indicated to him that they dislike all law firms and "don't like dealing with attorneys." Tom disagreed and testified that he thought that VanCanagan "was working for all of us" during the Gaming Garage transaction, which Tom and Gert agreed to but refused to pay any of VanCanagan's fee. Under cross examination, Tom repeated that he never paid VanCanagan's fees owed by McDonald or K-Mac related to the Gaming Garage.

Ex. 9 is DML's client file for the Gaming Garage transaction, produced under subpoena.[2] VanCanagan testified that Ex. 9 is under the file name "McDonald" and that a reference in a April 30, 2015, letter from his paralegal to the Office of the Montana Secretary of State to "file no. 09-9520-017" indicates that this file is probably the seventeenth legal matter for which

---

[2]VanCanagan testified that Ex. 9 includes all correspondence regarding the Stevens and that DML withheld from production only confidential correspondence with McDonald. The Stevens did not file a motion to compel production of additional discovery documents.

VanCanagan/DML represented McDonald.[3]

The Stevens' Ex. 1 and Creditors' Ex. 1, and Ex. A are identical letters from VanCanagan's paralegal to the Liquor Control Division dated October 6, 2005.  Tom testified that Ex. 1 was cc'd to him.  Like Ex. 9, Ex. 1 includes the title line:  "Re: Our Client: J-Mac Corporation ...."  Ex. 1 goes on to explain the membership of Lemonade, LLC.  The second to last paragraph at page 2 of Ex. 1 refers to "Our clients."  It is this reference to "Our clients" upon which the Stevens and the Debtor base their claim that DML represented them in the Gaming Garage transaction, and that therefore Cotner and DML should be disqualified from employment by the estate because of a conflict of interest.

VanCanagan testified that "Our clients" in Ex. 1 referred to McDonald and K-Mac, not to Tom or the Stevens, and that the Stevens were not DML's clients.  VanCanagan testified that Tom and his parents did not ever request that he or DML represent them and that DML never represented the Stevens.  Furthermore, VanCanagan testified that if the Stevens had requested VanCanagan to represent them, DML would have required the Stevens to sign disclosures of representation and conflict waivers.

Tom testified that he felt VanCanagan and DML were representing Tom, Gert and McDonald in the liquor license transfer and that VanCanagan never told him that he was only representing McDonald.  Gert testified that VanCanagan "absolutely" gave Tom legal advice, received financial information from her and advised her that her lien had to be removed against the Gaming Garage in order for the transaction to be approved.  Under cross examination, Gert

---

[3]VanCanagan explained that this particular April 30, 2015 letter involved an involuntary dissolution of Lemonade Holdings, LLC.

testified that she was involved in the transaction as much as anyone by attending meetings with McDonald, Tom and VanCanagan and by providing financing, legwork and labor services to form the Gaming Garage, but she agreed that she and her husband are not members of Lemonade, LLC.

**Formation of Lemonade[4] LLCs.**

As VanCanagan described the Gaming Garage transaction, McDonald had a liquor license which he would contribute and Tom had a building and adjacent real property,[5] which he would contribute.  McDonald testified that he had a phone call with VanCanagan and one or two meetings with Tom to set up the two LLCs.  Tom testified that he, Gert[6] and McDonald met with VanCanagan 5 or 6 times and provided VanCanagan with documents.

VanCanagan formed Lemonade, LLC for McDonald and K-Mac to receive and hold ownership of McDonald's liquor license.  A second LLC called Lemonade Holdings, LLC was formed to own Tom's real property and Lemonade Holdings, LLC would lease its property to Lemonade, LLC where the casino business would operate under the name "The Gaming Garage." VanCanagan testified that this arrangement made both sides' contributions equal,[7] and that K-

---

[4]Tom explained the reference to Lemonade as their making lemonade out of lemons, i.e., Tom's and McDonald's previous failed businesses.

[5]McDonald testified that there were three properties involved in the transaction:  A casino, a car wash and a storage facility.  Cotner testified that the title report showed two tracts: Tract A consisting of the Gaming Garage and Tract C which included a car wash and storage facility.

[6]Gert was involved because she was backing Tom financially with her credit.

[7]Ex. 1 explains that the initial capital contribution K-Mac was slightly higher than Tom's, and in order to equalize the ownership percentages Tom agreed to remodel the building where the Gaming Garage business was to operate.

Mac was a member of both LLCs.  Tom testified that his car wash was "kind of involved" in the Gaming Garage because there was a lien against both of his properties[8] and he had to remove Gert's lien off of the Gaming Garage property.

According to VanCanagan and Cotner, DML represented McDonald and K-Mac, but did not represent Lemonade, LLC or Lemonade Holdings, LLC.  Cotner testified that DML performs a computerized conflicts search of its records when considering representing prospective clients, in which it searches its complete list of all clients which DML represents for possible conflicts. Cotner testified that, according to DML's computer records, the Stevens, and their trusts, have never been clients of DML.  Further, Cotner testified that:  neither Tom, Lemonade, LLC nor Lemonade Holdings, LLC ever were clients of or represented in legal matters by DML; and that DML's files contain no confidential information of the Stevens or Tom.

A liquor license transfer application was prepared and submitted to the Montana Department of Revenue on October 6, 2005.  Creditors' Ex. 5 is a letter from VanCanagan's paralegal to Bitterroot Valley Bank referencing the application and its pending approval.  It has a title line:  "Re:  K-Mac Corporation d/b/a Mac's Plan" and is cc'd to McDonald.

The Stevens' Ex. 2 is the State of Montana Alcoholic Beverage/Gambling Operator Combined License Application submitted by Lemonade, LLC.  VanCanagan prepared the Stevens' Ex. 2.  The declaration and affidavit at Section VII of the Stevens' Ex. 2 is signed by McDonald[9] on October 5, 2005.  The ownership information at Section IIC of the Stevens' Ex. 2

[8]Tom said that McDonald's corporation also had encumbrances against it.

[9]McDonald signed Section VII stating that he is a member of the LLC in his own capacity, not as president of K-Mac.  That is inconsistent with the ownership information in Section IIC naming K-Mac as an owner rather than McDonald personally.

lists Tom's ownership percentage in Lemonade, LLC, as 21.88%, Christina's percentage as 21.88%, and K-Mac's ownership percentage as 56.25%. VanCanagan testified that he represented only one member of Lemonade, LLC: K-Mac.

The Operating Agreement of Lemonade, LLC is attached to the Stevens' Ex. 2 marked as Ex. A. VanCanagan testified that the DOR requires an operating agreement for any LLC which applies for a liquor or gambling license, which VanCanagan would send in to the DOR with an application and supporting documents. The Operating Agreement in the Stevens' Ex. 2 is signed by McDonald for K-Mac and by Tom and Christina. Tom testified that the Stevens' Ex. 2 did not have information regarding his parents and that he knew that McDonald had access to all information on Ex. 2.

VanCanagan prepared the license application and the Operating Agreements. He testified that he received feedback from the Stevens during his drafting of the license application and Operating Agreements, similar to what he would receive from an attorney representing another party. However, VanCanagan testified that he did not direct the Stevens to do anything and he did not receive confidential information from them. Gert testified on redirect examination that she told VanCanagan details about her guarantee of bank financing for Tom and that in her opinion VanCanagan's choice to not include those details in the license application was an exercise of VanCanagan's professional judgment.

Also attached to the Stevens' Ex. 2, beginning at page 055, is a First Amendment to Operating Agreement of Lemonade, LLC. It is not signed and has notes and comments on post-it notes. Gert testified that she did not know whether any of the Stevens' financial information is included in Stevens' Ex. 2. Page 6 of Ex. 2 (Doc. 56-2) has the Stevens' names, address, name

8

of their enterprise and alcoholic beverage and gambling license.  Under cross examination, Gert admitted that the Stevens' Ex. 2 does not include any confidential information of the Stevens, but she thinks that VanCanagan should have asked for and included in the application information about her lien against Tom's property.

A First Amendment to Operating Agreement of Lemonade, LLC, dated November 18, 2005, and signed by McDonald for K-Mac and by Tom and Christina, was admitted as Ex. 8. VanCanagan testified that he drafted Ex. 8 to protect McDonald after it was discovered that real property which Tom was going to contribute to Lemonade Holdings, LLC was encumbered, after Tom had represented that it was unencumbered.

In a letter dated January 11, 2006, VanCanagan wrote to attorney Chris Swartley a letter which began:  "I am writing as a follow up to our discussion regarding our client Joe McDonald, Lemonade, LLC, a Montana limited liability company and Tom and Christina Stevens." Creditors' Ex. 4.  VanCanagan testified that he told Swartley in Ex. 4 that he represented McDonald in that transaction.  The Stevens' Ex. 4 is another letter from VanCanagan's paralegal to the Liquor License Division, dated July 6, 2006, which includes the title line:  "Re:  Our Client: K-Mac Corporation d/b/a Mac's Place" and "All Beverage Liquor License No. 04-801-5027-002."

Ex. 7 is the "Amended & Restated Operating Agreement of Lemonade, LLC" dated July 10, 2006, between Tom, Christina and K-Mac.  VanCanagan testified that he prepared Ex. 7 in order to restructure the transaction between K-Mac, Tom and Christina.  McDonald signed Ex. 7 as K-Mac's president and Tom and Christina signed it.

**Creditors' State Court Lawsuit Against Tom.**

9

Cotner testified that during 2006 he was contacted by the above-named Creditors, all of which were Cotner's clients, and each of which was owed money by a company owned by Tom. Tom admitted that he owned a gas and convenience store with his wife and that the Creditors supplied his business with supplies and merchandise.

Cotner testified that he investigated whether DML had a conflict of interest regarding Tom and concluded that no conflict existed because DML did not have an attorney-client relationship with Tom or his spouse in 2006, or at present. On behalf of the Creditors, Cotner filed and served a complaint against Tom and TGS, Inc.,[10] in the Montana Fourth Judicial District Court, Missoula County, Cause No. DV-06-453 on May 22, 2006. The Stevens' Ex. 6 is the complaint alleging breach of contract, fraud and other claims for relief.

Cotner testified that Tom did not file a motion to disqualify DML as plaintiffs' counsel in Cause No. DV-06-453 on the basis of a conflict of interest. Tom agreed, but testified that he did not know what a disqualification motion is since he is not an attorney and he testified that he called Baker three times in 2005 or 2006 complaining that DML had a conflict of interest by suing him in Cause No. DV-06-453.

On rebuttal, Baker admitted that Tom called him several times after the filing of the complaint in DV-06-453. Baker testified that Tom felt he had been mistreated by the Creditors. As a result of Tom's calls, Baker went back and looked at DML's conflicts check again and spoke with VanCanagan. After completing his review of the conflict check, Baker testified, he told Tom that DML had no conflict of interest.

Tom was pro se in DV-06-453 and he did not defend against the complaint. A default

---

[10]Tom testified that he and his wife owned the car wash, and it was not incorporated.

10

judgment was entered against Tom and TGS in 2007 in Case No. DV-06-453 in the amount of approximately $107,390. Tom did not pay that judgment and did not file a timely appeal.

Creditors moved for entry of a charging order and appointment of a receiver in DV-06-453. The state court appointed a receiver in DV-06-453 on October 7, 2013, with respect to Tom's interest in Lemonade, LLC.

On September 9, 2013, McDonald sent VanCanagan a letter stating he believed that a motion for appointment of receiver of Lemonade, LLC by Cotner and Baker "is a direct conflict of interest on your firm's behalf" because VanCanagan "prepared our entire LLC and Statement of Montana Liquor License transfer, having full knowledge of my and the Stevens' financial and personal information." Creditors' Ex. 6. Ex. 6 requests that DML refrain from appointing a receiver in McDonald's business. McDonald testified that someone in the Stevens family prepared Creditors' Ex. 6 and Tom asked him to sign it, so he did. McDonald testified that he is not responsible for the debt for which a receiver was to be assigned against his 50% ownership of Lemonade, LLC. Cotner agreed and testified that he explained to McDonald that the charging order entered in Case No. DV-06-453 was directed only against Tom's 25% interest in Lemonade, LLC not against McDonald's interest.

Asked on direct examination about Creditors' Ex. 6, Vancanagan answered "No" when asked if he ever represented Tom's parents the Stevens in the Lemonade transaction. He also answered "No" when asked if he received any confidential information from the Stevens during the course of the Gaming Garage transaction and answered "No" when asked if any confidential information of the Stevens was required to submit the Lemonade, LLC license application. VanCanagan testified that the only information the Stevens gave him was in the organizational

documents for Lemonade, LLC, and Lemonade Holdings, LLC, which he included in the license application submitted to the DOR and, as such, is public information.

**Tom's Bankruptcy Case**.

Tom filed a voluntary chapter 7 bankruptcy petition on February 14, 2014, listing assets consisting of personal property worth a total of $9,420 and total unsecured liabilities in the amount of $107,390.39.  On Schedule B, Tom listed his interest in Lemonade LLC as a "25% Member" under item 14 ("Interests in partnerships or joint ventures") at a current value of $0.00. The Creditors are listed separately on Schedule F with claims in the total amount of $107,390.39. Their claims are not marked as disputed, unliquidated or contingent.  The Stevens are not listed on Schedule F and have not filed a Proof of Claim, so they are not creditors with an allowed claim in this case.

Baker filed a notice of appearance in the case on behalf of the Creditors on April 24, 2014.  The 11 U.S.C. § 341(a) meeting of creditors was held over several dates and concluded on June 6, 2014.  Cotner and Baker attended the § 341 meeting and examined Tom on behalf of the Creditors.  Cotner testified that at the § 341 meeting he learned about certain transactions by Tom which he believes can be avoided as fraudulent transfers.

On October 31, 2014, Cotner and Baker commenced Adversary Proceeding No. 14-00035("Adv. 14-35")  on behalf of the Creditors against Tom, the Stevens and the Stevens' Revocable Trust.  The adversary complaint filed in Adv. 14-35 includes counts objecting to Tom's discharge, and seeking exceptions from discharge, and Count V requesting an accounting of all distributions made by Lemonade, LLC, to Tom and his parents.  Cotner admitted that the facts alleged in his complaint in Adv. 14-35 included many of the facts alleged in the complaint

12

in Case No. DV-06-453. However, he testified that the Creditors' complaint in Adv. 14-35 includes additional facts about Tom's conduct in violating the state district court's charging order. The complaint in Adv. 14-35 includes allegations of Tom's conduct in 2006 transferring money from Lemonade, LLC to the Stevens, for which Cotner testified there was no underlying debt owed by Tom and a deed in lieu given by Tom to the Stevens to satisfy a debt which Cotner testified did not exist.

The Trustee moved to intervene or be joined in Adv. 14-35 as co-plaintiff and that motion was granted. Adv. 14-35 since has been bifurcated into two separate adversary proceedings.

Cotner testified that DML first learned on March 25, 2015, about conflicts of interest alleged by the Stevens and Tom arising from VanCanagan's representation in the Gaming Garage transaction and the claims asserted by Creditors and Trustee against Tom and the Stevens in Adv. 14-35. Cotner said that, after learning of the allegations of conflicts, he spoke with VanCanagan and Dennis Lind of DML and with the Creditors, after which Cotner concluded that DML had no conflict of interest from representing the Creditors against the Stevens because VanCanagan did not represent the Stevens, their trust, Tom or the Lemonade LLCs.

The Trustee filed her application on March 25, 2015, to approve employment of Cotner and DML as attorneys for the estate on a contingency fee basis to pursue potential avoidance actions based on Tom's transfers to his parents. The application (Doc. 37) discloses Cotner's representation of the Creditors against Tom in the state court action and states that DML has no undisclosed connections with the debtor and is a "disinterested person" as defined in § 104(14). The application includes a waiver of conflict signed by the Creditors and the Trustee and includes Cotner's affidavit which states that to the best of his knowledge neither Cotner nor

DML represent any interest adverse to the Debtor or the estate in the matters in which DML is to be engaged.  The application provides for a graduating contingency fee starting at 40 percent (40%) and increasing to 50% in the event of an appeal, plus reimbursement of costs.

Under Montana Local Bankruptcy Rule 9013-1(g)(2)(A), an application to approve employment of professionals is a matter which this Court will routinely grant or deny, without notice or hearing in the Court's discretion, with any party in interest having the right to object and request a hearing within 14 days.  Accordingly, the Court granted the Trustee's application to employ Cotner and DML as attorneys on March 25, 2015.  The Stevens filed a timely motion for reconsideration of the Order approving DML's employment on April 13, 2015, and set the matter for hearing.

The Stevens' motion alleges that Cotner has an actual conflict of interest in the simultaneous representation of the estate and Creditors:  First, because the Trustee determined no grounds existed to oppose Debtor's discharge while Creditors' complaint includes claims objecting to Debtor's discharge and seeking exception of Creditors' debt from his discharge; and second, because of VanCanagan's alleged representation of Tom and the Stevens in the transfer of McDonald's liquor license to the Gaming Garage and obtaining release of the Stevens' lien and receiving their confidential information, which required VanCanagan's exercise of professional judgment.  The Stevens object that Cotner is both not disinterested and has an interest adverse to the estate, citing *Tevis v. Wilke, Fleury, Hoffelt, Gould & Binney, LLP (In re Tevis)*, 347 B.R. 679, 688 (9th Cir. BAP 2006).  The Stevens also contend that Cotner is disqualified by his failure to disclose his fee arrangement with the Creditors/Plaintiffs, which

14

creates a substantial danger of "double dipping.[11]"

Cotner agreed under cross examination that he has a duty of undivided loyalty to his clients and he admitted that DML had a "connection" with Lemonade, LLC by virtue of DML's representation of McDonald and K-Mac, but Cotner insisted that did not constitute representation of Lemonade, LLC by VanCanagan or DML.  Cotner admitted that a potential conflict of interest may occur between the Creditors and the Trustee if a settlement in Adv. 14-35 is proposed, but he testified that no actual conflict exists at this time and that currently the Creditors' interests and the estate's interest are in alignment since 96% of allowed claims in this case are held by the Creditors.  The Trustee testified that she agrees with Cotner that a potential conflict of interest may occur, but not an actual conflict.  Cotner agreed with the Court at the hearing that, if the potential conflict ripens into an actual conflict, then Cotner's employment must be set aside. Tom filed his joinder in the Stevens' motion for reconsideration on April 13, 2015.

A letter in DML's file, Ex. 9 dated April 30, 2015, from VanCanagan to the Montana Department of Justice Liquor License Division contains the subject line:  "Re:  Our Client:  K-Mac Corporation d/b/a Mac's Place All Beverage Liquor License No. 04-801-5027-002.[12]"  The first sentence of that letter states:  "Please be advised that our firm represents K-Mac Corporation d/b/a Mac's Place of Missoula, Montana, with regard to the above-referenced liquor license."  The third sentence states:  "Our *client* intends to transfer the license to a new location in Missoula and is in the final stages of completing the appropriate application for transfer."  Ex. 9

---

[11]No evidence was offered to support a finding that there is a danger of double dipping by DML.  With the bifurcation of Adv. 14-35, no such danger has been sufficiently shown.

[12]Creditors' Ex. 3 is the same letter.  It is cc'd to McDonald.

(Emphasis added).

On May 1, 2015, the Trustee and Creditors' filed responses to the Stevens' motion for reconsideration.  The Trustee contends that Cotner is not per se disqualified by his joint representation of the Creditors under § 327(c) because no actual conflict of interest exists since the Creditors hold 96% of the allowed claims and they and the Trustee are interested in maximizing the estate so their interests align.  The Trustee argues that her decision not to pursue a § 727 objection to discharge is not an actual conflict because the Creditors' § 523 dischargeability claims are not directed against the estate, will not give the Creditors preferences unavailable to other creditors, and will not affect the Trustee's administration of the estate. Cotner's fee arrangements, the Trustee argues, do not create an actual conflict because any contingency fee would come off the top, and any compensation paid to DML would be subject to Court approval after application.

With respect to DML, the Trustee agrees with DML that no express attorney-client relationship exists between DML and the Stevens or Tom in the transactions transferring the liquor license and forming Lemonade, LLC, even though the Stevens and Tom received a benefit from VanCanagan's services to McDonald and K-Mac.  Further, Trustee contends no prospective or implied attorney-client relationship exists between DML and the Stevens or Tom because no separate consultation occurred, no written attorney-client agreements or engagement letters exists in the record, and the DML correspondence refers to K-Mac as its client except for one reference to "our clients."  With respect to the lien release and alleged confidential information, the Trustee argues that any information included in the license application was not confidential because it was disclosed to McDonald, the DOR and other parties.  Lastly, the Trustee argues, even if an

attorney-client relationship is determined to exist between Tom and DML, under § 327(e) the Trustee still may employ an attorney that has represented the Debtor for a special purpose if it is in the best interests of the estate and the attorney does not hold an interest adverse to the debtor or to the estate.

The Trustee argues that her employment of Cotner and DML is in the best interests of the estate because they are familiar with the complicated facts forming the basis of the avoidance claims and can avoid duplication of costs and legal fees, which new counsel would incur.  The Trustee advised the Court that the estate has $2,900, which is not enough to pay a different attorney an hourly wage, while Cotner and DML agree to be compensated on a contingency fee basis in the avoidance action.

Cotner testified that no factual basis exists to the Stevens' contentions that he or DML have a conflict of interest and he asserts that he can do a good job for creditors of this bankruptcy estate, 96% of which are his clients.  Creditors argue that DML's concurrent representation of them and the estate as special counsel is not disqualified because no actual conflicts of interest exist between the estate and the Creditors; and Creditors are not afforded a preference over the other creditors.  The Creditors' nondischargeability claims against Tom are not against the estate and would not affect the Trustee's administration or distribution of the estate.

Creditors contend that no attorney-client relationship existed between VanCanagan and the Stevens or Tom and the evidence does not support any reasonable belief that an implied attorney-client relationship existed.  Creditors submit that VanCanagan represented McDonald and K-Mac, as shown by the documentary evidence and the absence of any written agreements and conflict waivers with the Stevens and Tom.  Creditors argue that any information provided

by the Stevens for inclusion in the application and operating agreements were publicly disclosed to McDonald and governmental entities and, as such, that information and recorded lien releases are not confidential information and cannot give rise to a reasonable belief that an implied attorney-client relationship existed with the Stevens or Tom.

Like the Trustee, Creditors claim that the Trustee may employ Cotner under § 327(e) as attorney for a special purpose, even if DML is found to have represented the debtor, if Cotner does not represent or hold an interest adverse to the debtor or estate with respect to the matter for which the attorney is to be employed, since Cotner is familiar with the facts of the avoidance claims and his employment would avoid unnecessary duplication of services and costs which would result from the Trustee hiring a different attorney; the avoidance claims are against the Stevens not the Debtor.

## DISCUSSION

Section 327(a) provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

*Tevis*, 347 B.R. at 687; *In re Fondiller*, 15 B.R. 890, 891 (9th Cir. BAP 1981).

*Tevis* explains that § 327(a) requires a two-pronged test for approval of employment of professional persons:  (1) they cannot hold or represent an interest adverse to the estate; and (2) they are disinterested persons.  *Tevis*, 347 B.R. at 687.  These factors serve the "important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."  *Id.*

18

(Citations omitted).

The BAP in *Fondiller* interpreted the phrase "hold or represent an interest adverse to the estate" to mean that "the attorney must not represent an adverse interest relating to the services which are to be performed by that attorney." 15 B.R. at 892. In *Tevis* the BAP noted that "adverse interest" is not defined in the Code, but that to hold an adverse interest means: to possess or assert any economic interest that would tend to lessen the value of the estate or that would either create an actual or potential dispute in which the estate is a rival claimant; or to possess a predisposition under circumstances that render such a bias against the estate. *Tevis*, 347 B.R. at 688 (citing cases). To *represent* an adverse interest means to serve as an attorney for an entity holding such an adverse interest. *Id.* (Emphasis in original).

In Adv. 14-35 the Creditors have deferred to the Trustee, who intervened and employed Cotner to pursue the avoidance claims against the Stevens, in which the Trustee seeks to recover funds for the estate for distribution to the creditors, 96% of the claims of which are held by Creditors. Thus, no evidence exists of an actual or potential dispute in which the estate is a rival claimant against Creditors or of bias against the estate.

The term "disinterested person" is defined at 11 U.S.C. § 101(14) as follows:

(14) The term "disinterested person" means a person that –

    (A) is not a creditor, an equity security holder, or an insider;
    (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
    (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason . . . .

Cotner and DML are not creditors or insiders of the Debtor under § 101(31)(A). For the

19

purposes of disinterestedness, "a lawyer has an interest materially adverse to the interest of the estate if the lawyer either holds or represents such an interest." *Tevis*, 347 B.R. at 688. Courts should disfavor interpretations of statutes that render statutory language superfluous. *Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). This Court understands that the term "materially adverse" to the interest of the estate in § 101(14)(C) requires more than just a potential or theoretical adverse interest. It must be materially adverse. Cotner and the Trustee admit that DML may have a potential conflict of interest in the event of a settlement of the avoidance actions, but currently no proposed settlement is evidenced in the record. Therefore, that potential conflict is speculative and not in this Court's view "materially adverse" for purposes of disinterestedness at the present time.

Section 327(c) provides:

In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States Trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

*See In re Hettick,* 2008 WL 723955 *2 (Bankr. D. Mont. Jan. 23, 2008).

In the instant case no objection to Cotner's employment has been filed by another creditor or the U.S. Trustee. The Stevens do not have an allowed claim in this bankruptcy case so they are not a "creditor" as defined at § 101(10) and, thus, their objection does not trigger § 327(c). If the Stevens were creditors, they would have to show that an actual conflict of interest exists in order to disapprove Cotner's employment. *Id.* The term "conflict of interest" in § 327(c) is not defined in the Code. As discussed below, the evidence does not show an actual conflict of

20

interest.

Section 327(e) provides:

The Trustee, with the court's approval, may employ, for a specified special
purpose, other than to represent the trustee in conducting the case, an attorney that
has represented the debtor, if in the best interests of the estate, and if such attorney
does not represent or hold any interest adverse to the estate with respect to the
matter on which such attorney is to be employed.

Nothing exists in the record to suggest that Cotner ever represented the Debtor.  The

Stevens and Tom contend that VanCanagan of DML represented them in the liquor license

transfer and Garage Casino formation.  Montana Rules of Professional Conduct Rule 1.10(a)

imputes any conflict to other lawyers in the same firm and provides that "none of them shall

knowingly represent a client when any one of them practicing alone would be prohibited from

doing so . . . ."  *See Krutzfeldt Ranch, LLC, v. Pinnacle Bank*, 2012 MT 15, ¶ 18, 363 Mont. 366,

372, 272 P.3d 635, 641.

In *Hettick* this Court wrote that the BAP in *Fondiller*,

approved the employment of special counsel to the trustee for the limited purpose
of investigating and recovering certain assets even though the counsel continued
to represent certain creditors in the case. Recognizing the potential for conflict
where an attorney represents both a creditor and the trustee as general counsel, the
panel acknowledged that the statute would require the firm to cease representing
the creditors if it were to act as general counsel rather than as special counsel to
the trustee. 15 B.R. at 892. However, the court in *Fondiller* went on to explain
that the same concerns did "not apply to those situations in which an attorney's
services are limited to a narrow field for a specific purpose." *Id.* The firm's
employment was limited to the search for and recovery of specific assets and the
investigation of certain alleged fraudulent conveyances (not involving the firm's
creditor clients). To that extent, the estate's interests and the interests of the firm's
clients were identical with respect to the firm's duties as special counsel. Thus, the
statute did not prohibit the firm's employment "wherein the attorneys represent the
trustee in a special limited capacity that presents no conflict of interests between
the trustee and the creditor clients of the attorneys." *Id. See also In re Iorizzo*, 35
B.R. 465 (Bankr.E.D.N.Y.1983) (though special counsel represented estates

21

which might have certain interests adverse to each other, interests which were represented as special counsel were interests which estates shared in common to investigate and recover concealed assets and, thus, there was no conflict of interest requiring disqualification).

*Hettick,* 2008 WL 723955 at *2

Cotner's employment by the Trustee for the special limited capacity to pursue the avoidance actions are the same kind of special limited capacity as in *Fondiller.* Cotner's employment by the Trustee is not as general counsel, but rather is limited to search for and recovery of specific assets and investigation and avoidance of transfers. *Fondiller,* 15 B.R. at 892. Where, as in the instant case, it is the trustee who has intervened and is seeking to recover against the Stevens in the avoidance action, the interests of the Creditors and the Trustee coincide because if money is recovered for the estate, the Creditors' pro rata recovery will be greater. *Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir. 1993), *cert. denied* 510 U.S. 867, 114 S.Ct. 190, 126 L.Ed.2nd 148 (citing *Fondiller*). Cotner is not disqualified for employment under § 327(c) based on his employment by the Creditors, and he may be employed under § 327(e) notwithstanding the alleged representation of the Debtor because his employment by the estate in the avoidance action against the Stevens is in the best interests of the estate and Cotner does not represent or hold any interest adverse to the debtor or the estate with respect to the avoidance action. *Id.*

The Stevens and Tom allege several actual, *per se* conflicts of interest of Cotner and DML, which their attorney argues are *per se* disqualifying. "[A]rguments and statements of counsel are not evidence." *Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.)*, 482 F.3d 1118, 1122 n.1 (9th Cir. 2007); *Hurley v. Student Loan Acquisition Auth. of Ariz. (In re Hurley)*, 258

B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Sec. Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994). The first actual conflict alleged is Cotner's determination that the Creditors' claims seeking exception from Debtor's discharge and objecting to his discharge are likely to succeed versus the Trustee's determination not to proceed with objections to discharge. Dye argues that this is a disqualifying conflict of interest. In this Court's view it is simply a difference of opinion, which is not uncommon among members of the bar, but not evidence of a conflict of interest.

The Trustee argued that she determined whether to proceed with an objection to Debtor's discharge using the analysis set forth in the Trustee's Handbook. Because the estate has only $2,900 in funds, the Trustee concluded she lacked adequate funds to pay an attorney in an hourly fee. In addition she measured her likelihood of success at 50:50. Lastly, she noted that the result in an objection to discharge would make no difference in her administration of the estate. Based on those factors she decided not to pursue the objection to discharge.

The record contains no evidence showing what analysis the Creditors and Cotner followed in deciding to pursue exception from Debtor's discharge of their claims. In order to succeed on a motion to disqualify counsel under Montana law a party "must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court." *Krutzfeldt*, 2012 MT 15, ¶ 17, 363 Mont. at 372, 272 P.3d at 641, quoting *Schuff v. A.T. Klemens & Son*, 2000 MT

357, ¶ 36, 303 Mont. 274, 16 P.3d 1002.  The absence of evidence showing a conflict of interest between the Trustee and Creditors based on their difference of opinion on whether to object to Debtor's discharge or seek exception from his discharge weighs against the Stevens and Debtor as the moving parties.  It reasonably can be inferred from the Creditors' continuation of their dischargeability claims against Tom that they have concluded it is worth it.  The Trustee concluded it was not worth pursuing objections to discharge.  To call that difference of opinion a disqualifying conflict of interest is to stretch that term beyond any reasonable meaning.

Next, the Stevens and Tom contend that DML has a conflict of interest because VanCanagan had an attorney-client relationship with them in the liquor license transfer and formation of Lemonade, LLC, and the Gaming Garage.  The existence of an attorney-client relationship in Montana generally is a question of fact.  *In re Cini*, 2012 WL 6629594 (Bankr. D. Mont. Dec. 19, 2012), citing *Krutzfeldt*, 2012 MT 15, ¶ 14, 363 Mont. at 374, 272 P.3d at 642. The existence of an attorney-client relationship in Montana hinges on the client's reasonable belief that it exists.  *Id.*; *Krutzfeldt*, 2012 MT 15, ¶ 24, 363 Mont. at 374, 272 P.3d at 642, *citing Pro–Hand Servs. Trust v. Monthei*, 2002 MT 134, ¶ 14, 310 Mont. 165, 49 P.3d 56.

Rule 1.7(a) provides in part, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  *Krutzfeldt*, 2012 MT 15, ¶ 18, 363 Mont. at 371-72, 272 P.3d at 641.

However, violation of a rule of professional conduct is not alone sufficient to justify

24

disqualification of counsel, but it serves as "additional weight that may tip the scales in favor of disqualification." *Krutzfeldt*, 2012 MT 15, ¶ 17, 363 Mont. at 372, 272 P.3d at 641, *Id.*; *Schuff*, ¶ 36. Disqualification has a significant effect on litigation, burdens the judicial systems with delay and burdens the party that must retain and reeducate new counsel; thus, disqualification should be used sparingly under Montana law. *Krutzfeldt*, 2012 MT 15, ¶ 33, 363 Mont. at 377, 272 P.3d at 644.

Dye argues that the fact that VanCanagan drafted the license transfer application and all other documents related to the liquor license transaction and creation of Lemonade, LLC, and the Gaming Garage, necessarily created an attorney-client relationship between VanCanagan, Tom and the Stevens, because VanCanagan exercised professional judgment in the drafting. If that is true, then every time an attorney for one side drafts a contract or other legal document for another party to sign, then an attorney-client relationship would be created between the drafting attorney and the other side, which would render meaningless the Montana statute codifying the principle of contract law that ambiguities in a contract must be construed against the drafter. MONT. CODE ANN. § 28-3-206; *Smith v. Farmers Union Mut. Ins. Co.*, 2011 MT 216, ¶ 19, 361 Mont. 516, 523, 260 P.3d 163, 169. The argument is fanciful. In our legal system one side commonly drafts legal documents which are presented to the other side for signature. By itself, in this Court's view that does not create an attorney-client relationship generally and did not create an attorney-client relationship between VanCanagan, the Stevens and Tom based on this record.

VanCanagan and McDonald both testified that McDonald wanted to hire VanCanagan to represent his corporation K-Mac in the transaction with Tom and his wife. Tom admitted that it was McDonald's idea to employ VanCanagan and Tom agreed but refused to pay any his fees.

VanCanagan testified that he did not represent Tom or the Stevens.  The evidence shows that Cotner and Baker each performed a conflict check when they became aware of Tom's complaints about conflicts of interest; both Cotner and Baker concluded and testified that they found no conflict.

Ex. 9 is DML's file for the liquor license transfer application and formation of Lemonade, LLC, and the Gaming Garage.  Ex. 9 was produced under subpoena, but no case file or other document was produced or offered for admission into evidence which names Tom or the Stevens as clients of DML.  McDonald testified that the Stevens said they did not like dealing with attorneys. VanCanagan testified that Ex. 9 is one of seventeen client files which DML kept for McDonald and/or his corporation K-Mac.

Ex. 1, A, and several letters in Ex. 9 identify DML's client as K-Mac.  No written document exists in the record naming the Stevens or Tom as DML's clients.  Dye pointed to a single reference in Ex. A from VanCanagan's paralegal referring to "our clients" as proof that the Stevens and Tom had an attorney-client relationship with VanCanagan.  That is one possibility. Another possibility is that "our clients" refers to the client identified at the title line of Ex. A "K-Mac" and its owner, DML's long-time client McDonald.

Presented with conflicting testimony and two possible interpretations of "our clients," this Court concludes that the Stevens and Tom have failed their burden of showing clear error in this Court's Order approving Cotner's employment to justify reconsideration.  *Marlyn Nutraceuticals, Inc. v. Mucos Parma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

The instant case is factually distinguishable from *Krutzfeldt* and *Tevis.*  The Krutzfeldts

26

retained an attorney named Hoskins during several years of litigation with Pinnacle Bank, which was represented by the Crowley Fleck law firm ("Crowley").  *Krutzfeldt*, 2012 MT 15, ¶¶ 2-4, 363 Mont. at 367-69, 272 P.3d at 638-39.  Hoskins then joined Crowley.  Krutzfeldts other attorney raised a conflict of interest immediately and promptly moved to disqualify Hoskins.  The trial court denied the motion to disqualify Hoskins, but the Montana Supreme Court reversed on the grounds of a concurrent conflict.  *Krutzfeldt*, 2012 MT 15, ¶¶ 10, 37, 38, 363 Mont. at 370, 379, 272 P.3d at 640, 645-46.

While in *Krutzfeldt* it was undisputed that an attorney-client relationship existed, in the instant case it is disputed.  Conflicting witness testimony exists, and the absence of any DML client file for the Stevens or Tom or other written evidence stating that they were DML's clients distinguishes the instant case from the facts in *Krutzfeldt*.  So does Tom's delay of several years in moving to disqualify Cotner on the grounds of conflict, compared with Krutzfeldts' prompt motion to disqualify.  *Krutzfeldt*, 2012 MT 15, ¶ 9, 363 Mont. at 370, 272 P.3d at 640.  "The required showing of prejudice is necessarily less when prompt action is taken to address the conflict, as opposed to after trial on the merits has occurred."  *Krutzfeldt*, 2012 MT 15, ¶ 29, 363 Mont. at 376, 272 P.3d at 643-44.

The Krutzfeldts showed prejudice from lost time and money invested in their tax attorney and a lost trial date because they were left without expert legal assistance.  *Krutzfeldt*, 2012 MT 15, ¶ 30, 363 Mont. at 376, 272 P.3d at 644.  The Stevens and Tom failed to establish an attorney-client relationship with VanCanagan, and failed to show any lost time or money or other prejudice caused by VanCanagan.  On the contrary, Tom and Gert enjoyed the benefits of the legal services VanCanagan provided for his client McDonald and his corporation K-Mac, without

having to pay for it.

In *Tevis* the debtors contacted an attorney during their search for representation in litigation. After they filed their petition for bankruptcy relief the trustee hired the same law firm as counsel. 347 B.R. at 684-85. The BAP remanded after concluding that the law firm failed its burden to show its disinterestedness. 347 B.R. at 694. The parties agreed that the law firm never represented the Tevises, but the BAP remanded notwithstanding based upon California law that a disqualifying conflict of interest may arise where confidential information was disclosed and the law firm's disclosure in its employment application was not adequate for the bankruptcy court to decide whether confidential information was disclosed in the law firm's contacts with the Tevises. 347 B.R. at 693-94.

In the instant case the Stevens' attorney argues that they provided VanCanagan with confidential information, but they offered no evidence in support and Dye's argument is not evidence. Gert was asked specifically whether any of their confidential information was placed by VanCanagan in the liquor license transfer application and she answered no. Dye then argued that the omission by VanCanagan was an exercise of professional judgment showing that he had an attorney-client relationship. He did, only with McDonald and K-Mac, and not with the Stevens and Tom.

The Stevens and Tom offered no evidence that they met separately with VanCanagan to discuss confidential matters or that they signed an engagement letter and waiver of conflicts, which VanCanagan testified DML requires of new clients. They suggest that they gave VanCanagan confidential financial information and information relating to a lien release. However, any required information was disclosed to the DOR in the license application to which

28

the public presumably has access under Montana's open records laws.  An enforceable lien would be a matter of public record.  The Court gives little weight to the Stevens' and Tom's argument that they had an attorney-client relationship with VanCanagan based upon confidential information they delivered to him.

Rule 1.20 provides for an attorney's duties to prospective clients.  Rule 1.20(a) provides that a "person who consults with or has had consultations with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client."  The evidence does not show that the Stevens and Tom consulted with VanCanagan about the possibility of forming a client-lawyer relationship.  It shows that they met with VanCanagan as part of the negotiations and transaction with VanCanagan's clients McDonald and K-Mac, to transfer his liquor license and form Lemonade, LLC, and the Gaming Garage.  The Court finds that the Stevens and Tom were never prospective clients.

Rule 1.20(b) provides: "Even when no client-lawyer relationship ensues, a lawyer who has had consultations with a prospective client shall not use or reveal information learned in the consultation(s), . . . ."  Again, Tom and the Stevens were not prospective clients because they did not have consultations with VanCanagan about the possibility of forming a client-lawyer relationship.  Their consultations with VanCanagan occurred while he was representing his clients:  McDonald and K-Mac.

The Montana Supreme Court quoted Ronald D. Rotunda & John S. Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility* 352 (West 2011):

> If there are good reasons to disqualify counsel, then we accept the burdens that disqualification imposes.  But there should be good reasons.  If the legal system can respect the client's legitimate expectation of loyalty without disqualifying the

law firm, then disqualification becomes unnecessary and expensive.

*Krutzfeldt*, 2012 MT 15, ¶ 33, 363 Mont. at 377, 272 P.3d at 644.

Since disqualification should be imposed sparingly, *Krutzfeldt* at ¶ 33, this Court finds and concludes that no good reasons exist to disqualify Cotner and DML from representing the estate for a specified special purpose to pursue avoidance actions against the Stevens. The Stevens and Tom were not willing to pay VanCanagan and offered no credible evidence that they entered into an attorney-client relationship with him. VanCanagan represented McDonald and K-Mac, as shown by Ex. 9. Tom waited several years after entry of a final judgment to move to disqualify Cotner from the avoidance action. Cotner does not represent or hold any interest materially adverse to the Debtor or to the estate with respect to the avoidance action for which he is employed and is a disinterested person since the interests of the estate and the Creditors are identical in the avoidance action.

## CONCLUSIONS OF LAW

1.  This Court has exclusive jurisdiction of this Chapter 7 bankruptcy case under 28 U.S.C. § 1334(a).

2.  The Stevens' amended motion for reconsideration of the Order of employment of Cotner and DML by the estate is a core proceeding concerning administration of the estate under 28 U.S.C. § 157(b)(2)(A) & (O).

3.  The Stevens failed to show that this Court committed clear error in its Order approving the Trustee's application to approve employment of David B. Cotner and DML on a contingency fee basis to pursue potential avoidance actions against the Stevens.

4.  Cotner and DML are not disqualified from representation of the estate by an actual

30

conflict of interest with the above-named Creditors.  In addition, Cotner and DML are not

disqualified based upon a conflict caused by DML's prior representation of the Stevens and the

Debtor because the Stevens and the Debtor never were clients of DML.

**IT IS ORDERED** a separate Order shall be entered denying the amended motion for

reconsideration (Doc. 43/66) filed by the Stevens and Debtor's joinder (Doc. 45) thereto.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

31